**In re Dolly YAU, aka Dolly Hung; and Fat Yau, aka Fat N. Yau, aka Yau Fat, aka Norman Yau, Debtors.**

**Bankruptcy No. LA 89–23683–AA.**

United States Bankruptcy Court,
C.D. California.

May 21, 1990.

Brian L. Davidoff, Petillon & Davidoff, Los Angeles, Cal., for creditors Wen–Hsiang Chen and Susan Chen.

H. James Rosenberg, Law Offices of David B. Bloom, Los Angeles, Cal., for debtor.

David A. Greene, Saltzburg, Ray & Bergman, Los Angeles, Cal., for trustee.

## MEMORANDUM OF OPINION

ALAN M. AHART, Bankruptcy Judge.

### STATEMENT OF FACTS

Dolly and Fat Yau (the "Debtors") own a single family residence located in Glendale, California (the "Glendale property"). On August 10, 1983, Fat Yau caused to record a declaration of homestead in the official records of Los Angeles County that described the Glendale property. Mr. Yau resided at the Glendale property at that time.

On December 10, 1984, Fat Yau married Dolly Yau and they lived at the Glendale property. On January 7, 1985, Mr. Yau executed an Individual Grant Deed conveying an interest in the Glendale property to

Ms. Yau. It is unknown precisely what interest was transferred to Ms. Yau.[1]

Around April 1989, the Debtors vacated the Glendale property and moved into a house owned by Ms. Yau's parents in Monterey Park, California. The Debtors then leased the Glendale property to a third party for $3500 per month.

On October 26, 1989, the Debtors filed a joint petition under Chapter 7 of the Bankruptcy Code. In their petition they listed their address in Monterey Park. In their Schedule B–4 they claimed a $45,000 homestead exemption in the Glendale property pursuant to Bankruptcy Code[2] section 522(b)(2) and California Code of Civil Procedure ("CCP") section 703.140(b)(1).

At the section 341(a) meeting of creditors held November 29, 1989, the Debtors testified that they did not live at the Glendale property, but resided in Monterey Park.

The chapter 7 trustee timely filed a motion opposing the Debtors' claimed homestead exemption, and certain creditors filed points and authorities in support of this motion. Prior to the hearing on this motion, the Debtors filed an amended Schedule B–4 claiming a $45,000 homestead exemption in the Glendale property pursuant to CCP sections 703.140(a), 704.730(a)(2) and 704.920.[3]

### THE ISSUE

The trustee asserts the Debtors cannot claim a homestead exemption in the Glendale property because they do not reside there. The Debtors contend that the Glendale property is exempt whether or not they occupied the Glendale property when they filed their chapter 7 petition.[4] The

---

1. Schedule B–1 filed by the Debtors states that they have a "100% joint interest in fee simple" in the Glendale property. Neither the Schedule nor the other evidence before the court indicates whether this joint interest is held as tenancy in common, joint tenancy, or as community property.

2. All references to the "Bankruptcy Code" are to Title 11 of the United States Code.

3. Pursuant to Bankruptcy Rule 1009(a) and applicable case law, the Debtors generally may amend their schedules at any time before the case is closed.

4. Exemption rights in bankruptcy are ordinarily determined as of the date the petition is filed. See *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Seyfert*, 97 B.R. 590 (Bankr.S.D.Cal.1989); *In re Whitman*, 106 B.R. 654 (Bankr.S.D.Cal.1989). Since the Debtors vacated the Glendale property several months before this case was filed and had not moved back into such property by the date of the hearing on the trustee's objection, this Court need not decide whether a debtor in a bankruptcy case must continue to reside at his or her dwelling after the petition is filed until the court determines the dwelling is exempt.

court is called upon to determine whether, under the facts of this case, the Debtors are entitled to a homestead exemption in the Glendale property.

## SELECTION OF EXEMPTIONS

■ Bankruptcy Code section 522(d) lists the exemptions that a debtor can claim in a bankruptcy case. However, Bankruptcy Code section 522(b) permits each state to prohibit its debtors from using these exemptions. California has so "opted out," which means that a debtor in a California bankruptcy case can only claim exemptions under California law and any applicable federal non-bankruptcy laws. CCP section 703.130.

The Debtors assert in their amended Schedule B–4 the exemption of CCP section 703.140(a). This section provides, *inter alia,* that California joint debtors in a bankruptcy case may choose either the ordinary state exemptions applicable when a creditor enforces a money judgment *or* the listed set of exemptions, which are substantially similar to the bankruptcy exemptions described in 11 U.S.C. section 522(d). Thus, mere reference to CCP section 703.140(a) does not disclose which exemptions the Debtors have claimed.

## THE DWELLING EXEMPTION

The Debtors' amended Schedule B–4 also cites CCP section 704.730(a)(2) as authority for a $45,000 homestead exemption. This section, which is found in Article 4 of Chapter 4 of the California Enforcement of Judgments Law ("Article 4"), provides that the amount of the homestead exemption is $45,000 if the judgment debtor (or spouse of the judgment debtor) who resides in the homestead is, at the time of the attempted sale thereof, a member of a family unit and at least one member of the family unit either owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor. "Homestead" is defined in Article 4 as the principal dwelling in which the judgment debtor (or his or her spouse) resided on the date the judgment creditor's lien attached to the dwelling and in which

the judgment debtor (or his or her spouse) resided continuously thereafter until the date the court determines the dwelling is a homestead. CCP section 704.710(c). This is known as the "dwelling exemption."

### 1. *The Forced Sale Requirement*

■ Under California law the dwelling exemption for real property owned in fee simple is automatic; nothing has to be recorded. However, the dwelling exemption only applies to an involuntary or forced sale of the homestead, such as an execution sale pursuant to levy by a judgment creditor. CCP section 704.720(b) and 1982 Legislative Committee Comment thereto. This Court must, therefore, find that the Glendale property will be sold at an involuntary or forced sale to determine whether the Debtors can claim the dwelling exemption.

In *In re Cole*, 93 B.R. 707 (Bankr. 9th Cir.1988) the debtor filed a chapter 11 petition and acted as debtor in possession. The debtor was unable to maintain the monthly payments on his residence and subsequently sold it while the chapter 11 case was pending. The debtor claimed a dwelling exemption of $45,000 in the proceeds of sale, but the bankruptcy court denied this exemption.

On appeal, the Bankruptcy Appellate Panel (the "BAP") found that there was "little practical difference" between a chapter 7 trustee and a debtor in possession in a liquidating chapter 11. After noting that a chapter 7 trustee's sale of a residence was a forced sale, the BAP determined that sale by the debtor in possession in a liquidating chapter 11 was also a forced sale. Consequently, it sustained the debtor's dwelling exemption.

In *In re Knudsen*, 80 B.R. 193 (Bankr.C. D.Cal.1987), the debtor entered into an escrow to sell his home before filing for bankruptcy. The sale, however, was not consummated until after the filing for bankruptcy. The *Knudsen* court held that this was a voluntary sale and, as a result, the dwelling exemption did not apply.

■ In the instant case, there was no escrow pending to sell the Glendale proper-

ty at the time the Debtors filed their petition. If the trustee's objection is sustained, it seems clear that the Glendale property may be sold with or without the Debtors' consent. Consequently, under the *Cole* case, the trustee's objection is tantamount to a motion to sell, and sale of the Glendale property by the trustee would be an involuntary or forced sale.[5] If so, the Debtors must satisfy the residency requirement to obtain the dwelling exemption in the Glendale property.

### 2. *The Residency Requirement*

 As noted above, if there is a forced or involuntary sale, to successfully claim the dwelling exemption under California law a debtor (or his or her spouse) must have continuously resided at the dwelling from the date the creditor's lien attached until the date the court determines the dwelling is a homestead. Only when there is a temporary absence from the dwelling, such as a vacation or hospital stay, does a debtor who vacates the dwelling satisfy the continuous residency requirement. 1983 Legislative Committee Comment to CCP section 704.710.

 In the instant case, when the Debtors filed their chapter 7 petition, they were leasing out the Glendale property which they claim as their homestead. The Debtors had moved from the Glendale property to the Monterey Park property because they could not afford the monthly payments at the Glendale property. The Monterey Park property was owned by one of the Debtors' parents who let them live there rent free. The Debtors stated that they did not intend to abandon their homestead interest in the Glendale property by moving from that property, and that they hoped to return there sometime in the future. However, they provided no evidence of how much time may lapse before they would return or, indeed, that they would *ever* move back into the Glendale property.

Thus, because the Debtors are not temporarily absent from the Glendale property and have not resided at the Glendale property since before this chapter 7 case was filed, they are not entitled to the automatic dwelling exemption of CCP section 704.730.

### THE DECLARED HOMESTEAD EXEMPTION

The Debtors also claim in their Schedule B-4 that they are entitled to the homestead exemption of CCP section 704.920. That section, which is found in Article 5 of Chapter 4 of the Enforcement of Judgments Law ("Article 5"), states that a dwelling (as defined by CCP section 704.710(c)) at which an owner or spouse resides may be selected as a declared homestead by recording a homestead declaration. Thereafter, the dwelling is a declared homestead. CCP section 704.920. It is undisputed that Mr. Yau caused to record a homestead declaration for the Glendale property on August 10, 1983, and that he resided there on that date. Although there is no evidence that Mr. Yau owned the Glendale property when the homestead declaration was recorded, the court can infer that he was the owner on that date because (1) he has been an owner since at least 1985 and (2) the trustee has not satisfied his burden of proving that the homestead declaration is defective. See Bankruptcy Rule 4003(c). Consequently, the Court will assume that from and after August 10, 1983, the Glendale property was a declared homestead under Article 5.

In *In re Anderson*, 824 F.2d 754 (9th Cir.1987), the debtors recorded a declaration of homestead on their home in Mendocino, California. Later, a creditor recorded

---

5. In *In re Anderson*, 824 F.2d 754 (9th Cir.1987), discussed *infra*, the debtors moved away from their declared homestead and into another home they purchased before they filed bankruptcy. A creditor objected to the debtors' claim of exemption for the declared homestead. The *Anderson* court noted that, if the debtors had not vacated their declared homestead, they could have claimed the dwelling exemption for such property. 824 F.2d at 760. This dicta implies that the Ninth Circuit viewed the creditor's objection as arising in the context of a forced or involuntary sale.

an abstract of judgment (judgment lien) on the debtors' home. The debtors subsequently purchased and moved to a second home closer to the college one of the debtors was attending, and leased out the Mendocino house. Four months afterward, they filed a chapter 7 petition while still renting out the Mendocino house. The Ninth Circuit determined that the debtors were not temporarily absent from the Mendocino house and therefore did not continuously reside there for purposes of the dwelling exemption. Consequently, the Mendocino house was not the debtors' residence when the bankruptcy petition was filed and the dwelling exemption did not apply.

■ With regard to a properly recorded declaration of homestead, the *Anderson* court found that a declared homestead under Article 5 *does not* automatically entitle a debtor to the benefits of the Article 4 dwelling exemption, it only adds benefits to the dwelling exemption. After a debtor properly qualifies independently for the dwelling exemption, the Ninth Circuit listed three *additional* benefits that a debtor receives from having a valid declared homestead. First, exempt proceeds from a voluntary sale are protected.[6] Second, judgment liens do not attach to the equity protected by the declared homestead exemption. CCP section 704.950. Third, protection of the homestead against attachment of judgment liens may continue notwithstanding death of a homestead owner.[7]

■ The debtors in *Anderson* argued that the declaration of homestead automatically entitled them to the amount of the dwelling exemption set forth in CCP section 704.730. The Ninth Circuit rejected this argument for two reasons. First, it cited CCP section 704.970 for the proposition that recording of a homestead declaration does not protect the homestead against a forced sale under state law, and has no effect upon the right of a judgment creditor to levy and execute on the debtor's dwelling. Second, the Ninth Circuit found that the provision relied on by the debtors, CCP section 704.950(c),[8] did not automatically grant the amount of the dwelling exemption to a declared homestead.[9] The Ninth Circuit stated:

"The reference to § 704.730 in § 704.950 does not, as the debtors contend, incorporate all of the benefits in Article 4 into Article 5. Rather, the reference *is the short hand method chosen by the legislature to give added protection to the Article 4 dwelling exemption by further exempting it from judicial liens.*" (Emphasis added.) [10]

Thus, the recording of a valid homestead declaration gives a debtor the further advantage of obtaining priority for the *dwelling* exemption over a judgment lien where the debtor records a valid homestead declaration before the judgment lien is recorded.

---

**6.** Proceeds from a voluntary sale are protected for only six months after the date of sale unless they are re-invested in another dwelling and another homestead declaration is recorded on the new dwelling before expiration of the six-month period. If these requirements are timely satisfied, the new homestead declaration will "relate back" to the earlier homestead declaration so that any judgment liens recorded after the original homestead declaration was recorded will continue to be subordinate to the debtor's homestead exemption. See CCP section 704.960.

**7.** 824 F.2d at 757. Protection against judgment liens continues after death of a homestead owner only if, at the time of death, the declared homestead was the *principal dwelling* of a member of the decedent's family. CCP section 704.995. (Emphasis added.)

**8.** CCP Section 704.950(c) states:

"(c) A judgment lien attaches to a *declared* homestead in the amount of any surplus over the total of the following:
(1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.
(2) The homestead exemption set forth in [CCP] Section 704.730."

**9.** 824 F.2d at 758–59.

**10.** *Id.* at 759. CCP Section 704.730 sets forth the amount of the homestead exemption, depending upon certain characteristics of the debtor. That section also states that to exempt more than $30,000 in proceeds, the judgment debtor (or his or her spouse) must *reside in the homestead at the time of its attempted sale.* (Emphasis added.)

Again, according to *Anderson,* a declared homestead only *adds* benefits to the dwelling exemption, meaning that the continued residency requirement must be met before a debtor can obtain the benefits of a declared homestead.[11]

The conclusion that CCP section 704.950(c) is an additional benefit to a properly qualified dwelling exemption is buttressed by the treatment of attachment liens under California law. CCP section 487.025, which discusses the effect of a declared homestead on attachment liens, has language quite similar to CCP section 704.950, which deals with the effect of a declared homestead on judgment liens. CCP section 487.025, however, differs in two important respects. First, it expressly states that recording of a homestead declaration does not restrict or limit an attachment lien, whether the declaration is recorded before or after the lien attaches. Second, it refers to the Article 4 definition of homestead in CCP section 704.730, not to the Article 5 definition of a declared homestead in CCP section 704.910. Recall that the definition of homestead in Article 4 requires continuous residency by the judgment debtor or his or her spouse. A judgment creditor who obtains an attachment lien and then later records a judgment lien while the attachment lien is in effect has a lien against the debtor's dwelling, for priority purposes, from the date the attachment lien was created.[12] Therefore, if a debtor voluntarily sells a dwelling subject to an attachment lien and judgment lien of the same creditor, the debtor's exemption should have priority over the judgment lien only if the debtor (or debtor's spouse) resided uninterrupted at the dwelling from the date the attachment lien arose to the date the dwelling is found exempt.

Consider the following example. Debtor resides on Blackacre. Creditor records an attachment lien against Blackacre. Debtor records a valid declaration of homestead naming Blackacre thereby creating a declared homestead and then vacates Blackacre. The same creditor obtains a judgment against debtor and records a judgment lien against Blackacre. Debtor voluntarily sells Blackacre. If there were no continued residency requirement in CCP section 704.950 with respect to judgment liens, creditor's judgment lien would be subordinate to debtor's homestead exemption. But this result would undermine the statement in CCP section 487.025 that a homestead declaration has no effect on an attachment lien, because once the attachment lien is converted into a judgment lien, the judgment lien would be subordinated to the debtor's homestead exemption. This result also fails to consider that the priority of the judgment lien "relates back" to the date the attachment lien was created. If, as the example assumes, the attachment lien has priority over the homestead exemption but the judgment lien does not, then the judgment lien's priority would not relate back to the date the attachment lien attached.

If a creditor's judgment lien does not relate back to the creditor's attachment lien, a creditor with an attachment lien would ordinarily be encouraged to delay obtaining a judgment lien until the attachment lien was about to expire. An attachment lien generally terminates after three years, but may be renewed annually, so that it can remain effective for up to eight years. CCP section 488.510. This means that, unless the debtor has filed bankruptcy, each judgment creditor with an attachment lien would have an incentive to file

---

11. A treatise on California real estate law states that:
 "... [T]he requirement of continued residency [for the declared homestead exemption] can be inferred from the public policy which fosters the exemption and by the statutory provisions which define the amount of the exemption." 5 H. MILLER & M. STARR, CURRENT LAW OF CALIFORNIA REAL ESTATE § 13:27 at 264–65 (2d ed. 1989).

12. See CCP section 697.020(a). Under California law the validity and amount of the homestead exemption is also determined under the exemption statutes in effect when the attachment lien was created (if the attachment lien was the earliest lien created). CCP section 703.050(a).

repeated motions in state court to extend its attachment lien even though it could create a judgment lien by simply obtaining and recording an abstract of judgment.

For each of these reasons, the court finds the Debtors must satisfy the continuous residency requirement of the dwelling exemption to protect a declared homestead against judgment liens.[13]

## CONCLUSION

The Debtors are not entitled to the Article 4 dwelling exemption because they vacated the Glendale property before the case was filed. For the same reason they are not entitled to the Article 5 declared homestead exemption. As a result, the trustee's objection is sustained.[14]

Counsel for the trustee shall prepare, serve and lodge a proposed order and notice of entry pursuant to Bankruptcy Rules 9021 and 9022 and Local Rule 116(1)(a).

**13.** The only reported decision subsequent to *Anderson* that discusses the effect of a homestead declaration on an attachment lien is *In re Figy,* 102 B.R. 785 (Bankr.S.D.Cal.1989). In that case the debtor recorded a declaration of homestead, a creditor obtained an attachment lien, and the debtor then filed a chapter 7 case. At all relevant times the debtor resided at the declared homestead. However, after the bankruptcy petition was filed the debtor vacated the property.

The debtor filed a motion to avoid the creditor's attachment lien. The creditor opposed this motion and argued that because the declared homestead was no longer the debtor's residence, the debtor was not entitled to an exemption based upon the declared homestead.

Although the case only involved an attachment lien, the court in *Figy* did not mention

CCP section 487.025. It stated that moving away from a declared homestead does not destroy the declared homestead exemption. The *Figy* court also distinguished *Anderson* on its facts since the debtors in *Anderson* did not reside in the declared homestead when they filed bankruptcy. However, *Anderson* requires that a debtor reside at his or her dwelling to exempt the dwelling in bankruptcy. Therefore, *Figy* is consonant with *Anderson* only if the *Anderson* court would find that the residency requirement is determined on the date the bankruptcy petition is filed.

**14.** Nothing in this opinion, however, precludes the Debtors from again amending their Schedule B–4 to jointly claim any exemptions to which they are entitled under CCP section 703.-140(b).