[No. B197974. Second Dist., Div. Four. Oct. 1, 2008.]

CALIFORNIA COASTAL COMMISSION et al., Plaintiffs and Respondents,
v.
MICHAEL A. ALLEN, Defendant and Appellant.

COUNSEL

Law Offices of Thomas Swallow and Thomas Swallow for Defendant and Appellant.

Paul J. Beard II for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Michael J. Buley for Plaintiffs and Respondents.

OPINION

EPSTEIN, P. J.—Michael A. Allen appeals from an order for sale of dwelling, made after the court found he was not entitled to a homestead exemption. He claims Kenneth and Paula Radosevich lacked standing to levy on the property because they had received only a temporary assignment of the underlying judgment from the California Coastal Commission (Coastal Commission), the original judgment creditor.[1] He also asserts the assignment was issued in violation of the Public Contract Code and the open meeting laws, and that the assignment constitutes an illegal contract for the sale of attorney services by nonattorneys. On the merits, he claims the court erred in its determination that there was no applicable homestead exemption, and that the amount stated on the writ of execution failed to reflect the effect of his discharge in bankruptcy.

We conclude that the trial court was not required to resolve the procedural challenges to the assignment in this proceeding for an order for sale, since the applicable statutory requirements for acknowledgment of assignment were met. We also conclude the evidence supports the conclusion that Allen was not entitled to a homestead exemption. Finally, we find there was no evidence that the judgment liens underlying the writ of execution were discharged in bankruptcy. We affirm the order.

## FACTUAL AND PROCEDURAL SUMMARY

Allen was the owner of a residence in Malibu (the property). In 1998, the Coastal Commission brought an action against him for violation of a cease and desist order (*California Coastal Com. v. Allen* (Super. Ct. L.A. County, 1999, No. SC051985)). The Coastal Commission obtained a default judgment

---

[1] Respondents are the Coastal Commission and the Radoseviches, acting under assignment from the Coastal Commission. (See Code Civ. Proc., § 368.5.) For simplicity, we refer only to the Radoseviches as respondents.

against him in April 1999, and in June 1999, recorded an abstract of judgment in the amount of $1,469,000. Allen challenged the default judgment in the trial court, and then on appeal. In November 2000, this court affirmed the judgment in an unpublished opinion (*California Coastal Com. v. Allen* (Nov. 29, 2000, B137728)).

The Radoseviches obtained a judgment against Allen in the amount of $67,903.77 on May 20, 1999. They recorded an abstract of judgment for that amount on April 20, 2000.

Allen filed a voluntary petition for bankruptcy in April 2002. He was granted a discharge in bankruptcy on July 25, 2002. On July 7, 2003, Allen recorded a grant deed transferring title to the property to Trans America Property & Investment Inc., a Delaware corporation.

As of August 2005, there were at least three liens on the property. These were, in order of priority, a first trust deed obligation to Washington Mutual Bank for $430,000, the Coastal Commission's abstract of judgment for $1,469,000, and the Radoseviches' abstract of judgment in the amount of $67,903.77. The property was valued at approximately $2,250,000, and the burden on the property senior to the Radoseviches' claim, with accrued interest, amounted to $2,865,157.

Given this burden and their third priority position, the Radoseviches realized they would recover nothing under a judicial foreclosure of their judgment lien. They approached the Coastal Commission and negotiated an assignment of its judgment against Allen. The Coastal Commission considered the proposed assignment agreement in closed session on January 13, 2005. It then authorized its executive director, Peter Douglas, to enter into the assignment agreement.

The agreement was for the temporary assignment of judgment lien on August 17, 2005. The Radoseviches were required to "take all legal steps necessary to cause, in a timely manner, a sale of the Property." The agreement guaranteed that the Coastal Commission would receive $750,000 out of any sale proceeds, and an additional 20 percent of any sale price over $1.6 million. The assignment was temporary, in that it was limited to a period of two years, which could be extended by mutual agreement.

The Radoseviches obtained a writ of execution on the assigned Coastal Commission judgment in the amount of $2,435,157 on December 20, 2005. The court issued an order for sale in July 2006, but an error occurred in the Los Angeles County Sheriff's first attempt to levy on the property, and the sale order lapsed.

The Radoseviches filed a new application for order for sale of real property on October 11, 2006. Allen opposed the order, challenging the validity of the assignment. He also asserted his entitlement to the homestead exemption for the property. After hearing and supplemental briefing, the trial court granted the application and issued an order for sale of dwelling on January 17, 2007. Allen filed a timely appeal from this order.

## DISCUSSION

### I

Allen challenges the standing of the Radoseviches to obtain an order for sale, arguing that the Coastal Commission's temporary assignment of its judgment lien to them was void. Among his arguments is that the assignment exceeded the Coastal Commission's powers, violated the Public Contract Code and open meeting laws, and illegally bestowed powers on the Radoseviches which are reserved to the Attorney General. Amicus curiae Pacific Legal Foundation joins in these claims. We need not and do not reach these arguments.

This appeal is from an order for sale of dwelling, made under Code of Civil Procedure section 704.740.[2] That section is part of the Enforcement of Judgments Law (§§ 680.010–724.260), a comprehensive scheme governing the enforcement of civil judgments in California. (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 [39 Cal.Rptr.2d 432].)

Contrary to Allen's assertion, the Radoseviches are judgment creditors within the meaning of the Enforcement of Judgments Law. Section 680.240 defines the term "judgment creditor" to include an assignee of record: " 'Judgment creditor' means the person in whose favor a judgment is rendered or, if there is an assignee of record, means the assignee of record."

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

Section 681.020 prescribes the requirements for an assignee to enforce a judgment under this statutory scheme: "An assignee of a judgment is not entitled to enforce the judgment under this title unless an acknowledgment of assignment of judgment to that assignee has been filed under Section 673 or the assignee has otherwise become an assignee of record." The Law Revision Commission comment to this section explains: "Section 681.020 is a new provision that codifies a requirement of former practice. The Commission has been advised that as a matter of practice under the former law an assignee of a judgment was not permitted to obtain a writ of execution unless the assignment was made a matter of record." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 681.020, p. 65.)

Section 673 sets out the requirements for becoming an assignee of record. "An assignee of a right represented by a judgment may become an assignee of record by filing with the clerk of the court which entered the judgment an acknowledgment of assignment of judgment." (§ 673, subd. (a).) Subdivision (b) of section 673 sets out the precise contents of the acknowledgment of judgment. Subdivision (c) of section 673 prescribes the method for completing the acknowledgment: "The acknowledgment of assignment of judgment shall be: [¶] (1) Made in the manner of an acknowledgment of a conveyance of real property. [¶] (2) Executed and acknowledged by the judgment creditor or by the prior assignee of record if there is one." Notably, section 673 "is in addition to, and does not limit or restrict, any other means by which an assignee may become an assignee of record." (§ 673, subd. (d).)

These statutes, read together, specify requirements for an assignee to obtain standing as a judgment creditor to enforce a judgment under the Enforcement of Judgments Law. No provision is made for a debtor to attack the judgment creditor's authority to make the assignment; the scope of the provision is limited to the process for an assignee to obtain standing to proceed as a creditor. For this reason, we conclude the Legislature did not intend a proceeding under the Enforcement of Judgments Law to become a forum for litigating the validity of the underlying assignment agreement. Allen's challenges to the method and content of the Coastal Commission's assignment of judgment to the Radoseviches are subject to being raised in a separate proceeding. (See Gov. Code, §§ 11130.3, 54957.10.) Allen has not pursued this course. These claims do not bear on this limited proceeding.

The Radoseviches attached to their application for order for sale a copy of the acknowledgment of assignment of judgment. That document complied with the requirements of section 673, subdivision (b): it was signed by Peter

Douglas, executive director of the Coastal Commission, Clara Slifkin, Deputy Attorney General, as attorney for the Coastal Commission, and Michael J. Buley, as attorney for the Radoseviches. The signatures were notarized, and the acknowledgment was filed in the superior court on December 15, 2005. This is all that is required for purposes of the Enforcement of Judgments Law.

Allen argues this was insufficient because the acknowledgment stated that the judgment creditor "has temporarily assigned" its right in the judgment. We are provided no authority holding that an assignment must be permanent in order to grant standing to the assignee. Nor does Allen claim that the application for order for sale was sought or made after expiration of the assignment.

■ For purposes of the Enforcement of Judgments Law, the assignment and the acknowledgment of assignment were sufficient to give the Radoseviches standing to enforce the judgment.

## II

■ The purpose of section 704.740 is to determine whether the homestead or dwelling exemption applies in an action to enforce a money judgment. (See *Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 984 [4 Cal.Rptr.3d 434].) If the real property is the debtor's home, the debtor may be eligible for a homestead exemption on the proceeds of the sale. (§ 704.730.)

Under section 704.740, "the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article." (§ 704.740, subd. (a).) Section 704.710, subdivision (a) defines "dwelling" as "a place where a person resides . . . ." Subdivision (c) of section 704.710 provides that " '[h]omestead' means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead."

In their application for an order for sale, the Radoseviches asserted the property was not subject to the homestead exemption on two grounds. First, it was not owned by a natural person because Allen had transferred ownership of the property to a corporation, and second, he had leased the property and thus had not continuously resided there. After briefing and hearing, the court

determined that the property in question "is not subject to any homestead exemption and that the application ought to be granted." We agree with this conclusion.

In his opposition papers, Allen admitted he had transferred the property to Trans America Property & Investment Inc., a corporation of which he is the sole shareholder. Attached to the Radoseviches' motion was the grant deed transferring the property from Allen to the corporation, recorded on July 7, 2003. Allen argues, however, that the transfer did not cause him to lose his homestead exemption. He relies on *Palen v. Palen* (1938) 28 Cal.App.2d 602 [83 P.2d 36], in which the court held that homestead protection is not lost by conveyance of an interest in a dwelling to a constructive trust. (*Id.* at pp. 605–606.) The homestead statutes addressed in *Palen* (former §§ 1243, 1245) were repealed and superseded by the Enforcement of Judgments Law, enacted in 1982 (§ 680.010 et seq.).

■ Section 703.020, subdivision (a) of the Enforcement of Judgments Law, provides: "The exemptions provided by this chapter apply only to property of a natural person." (See *Canal-Randolph Anaheim, Inc. v. J. E. Wilkoski* (1980) 103 Cal.App.3d 282, 293 [163 Cal.Rptr. 30] [a professional corporation is not entitled to the "livelihood" exemption in former § 690.4].) Section 704.740, the exemption statute at issue in this case, is expressly limited to "the interest of a natural person in a dwelling . . . ." This language was added by amendment in 1984 "to make clear that the requirements of this article do not apply to the sale of an interest in a dwelling owned by a corporation or other artificial person." (Legis. Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 704.740, p. 351.)

There is no ambiguity in the governing statutes; the dwelling exemption is available only to a natural person, not to a corporation.[3] Once Allen conveyed the property to Trans America Property & Investment Inc., it was not owned by a natural person, and Allen was not entitled to the protection of the homestead exemption.

### III

The Radoseviches also asserted the exemption was inapplicable because Allen had not resided continuously on the property, as required for homestead

---

[3] Allen also argues this limitation does not apply because section 704.710, subdivision (a) includes within its definition of dwelling "(6) A stock cooperative, as defined in Section 11003.2 of the Business and Professions Code." That section, in turn, incorporates the definition of "stock cooperative" in Civil Code section 1351, subdivision (m), part of the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.). Nothing in the record suggests this property is a common interest development.

status under section 704.710, subdivision (c). This ground provides additional support for the court's determination.

In the October 11, 2006 application for the order for sale, the Radoseviches' counsel declared under penalty of perjury: "Since the issuance of the July 27, 2006 Order and its service, I have been contacted by Michael A. Allen who provided me with his telephone number . . . but refused to provide me with an address where I could contact him." Counsel further stated that "The current renter residing at the property is a Dr. Jason Childs . . . ." In his opposition, Allen stated that after he entered into an agreement with the Coastal Commission which he believed resolved its claims involving work he had performed on the property, "[h]e thereafter rented out his residence and left the Country in order to start a new business in Australia." Allen stated in his supporting declaration that "I currently reside on the Property. It is my sole home and residence and has been since 1989."

In reply, the Radoseviches' counsel stated in his declaration: "On or about November 16, 2006, I spoke with attorney Bradley Kreshek who represents Jason Giles. Kreshek informed me that Mr. Giles is a tenant at the 5958 Busch Drive property [the property] pursuant to a lease agreement he signed with Michael Allen on or about June 10, 2005." A copy of the lease was attached to the reply. It provides for rental of the house from June 1, 2005, to June 30, 2007.

At the hearing, Allen objected to admission of the lease for lack of foundation. Alternatively, he argued that under the terms of the lease, Allen maintained his ability "to have possession of a portion of his home at all times that he has ever rented it to anyone else." This is a reference to an addendum to the lease which provides: "The following areas are not included in this lease and remain in the full use of the landlord, and shall have full free access, the single car section of the garage, and at[t]ic." Asked if he was asserting that storage access is sufficient for a homestead, Allen's counsel replied: "It's not just storage. He has a home—he has a room there where he lives when he is visiting that he actually lives in when he is visiting, when he is here in the Malibu area."

On appeal, Allen argues: "Continuous residence does not mean that the homeowner cannot leave the dwelling, i.e., to go to the grocery store, to work, etc. It does not even mean that the homeowner cannot go on vacation, travel, or live away from his home for a temporary period of time." That is correct. In fact, the statute was amended in 1983 to delete the word "actually" which appeared before the word "resided". in section 704.710, subdivision (c) "to avoid a possible construction that a person temporarily absent (such as a

person on vacation or in the hospital) could not claim a dwelling exemption for his or her principal dwelling, or file a homestead declaration on his or her principal dwelling, merely because the person is temporarily absent, even though the dwelling is the person's principal dwelling and residence." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 704.710, p. 346.)

█ But Allen was not "temporarily absent" while retaining the property as his principal dwelling. Accepting his explanation of the lease terms, he retained access to part of the property, which included a room he stays in when he is in the Malibu area. During the two-year lease term, Allen was not temporarily absent from the property for work or vacation; he apparently resided elsewhere while retaining the right to be temporarily present in a room on the property when he was in the Malibu area. This does not meet the continuous residence requirement for a principal dwelling under section 704.710.

*Webb v. Trippet* (1991) 235 Cal.App.3d 647 [286 Cal.Rptr. 742], on which Allen relies, is inapplicable. It holds that there is no actual or continuous residence requirement for a declared homestead under section 704.910 et seq. (235 Cal.App.3d at p. 651.) Although Allen argues he recorded a declaration of homestead, he presented no evidence of a recorded homestead.

The evidence supports the conclusion that the property was not subject to the homestead exemption under section 704.740. The court properly issued an order for sale.

## IV

Allen claims the amounts listed on the writ of execution were erroneous because they did not take into account the effect of his discharge in bankruptcy. There is no evidence in the record that these liens were discharged. Allen submitted to the trial court the order of the bankruptcy court granting him "a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)." He also submitted the certificate of service, which listed the Radoseviches and the Coastal Commission among those entities served with that document. But he provided no evidence that their liens were discharged in the bankruptcy proceeding, and the automatic termination under section 493.030 does not apply because these liens were not created within 90 days prior to the filing of the bankruptcy petition. Allen did not establish that his bankruptcy affected the liens.

## DISPOSITION

The order is affirmed. Respondents to have their costs on appeal.

Manella, J., and Suzukawa, J., concurred.

A petition for a rehearing was denied October 17, 2008, and appellant's petition for review by the Supreme Court was denied January 14, 2009, S168200. George, C. J., did not participate therein.