**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> JASWINDER SINGH BHANGOO, <br>         Debtor. | BAP No. EC-21-1158-BSL <br><br> Bk. No.  21-10035 |
| JASWINDER SINGH BHANGOO, <br>         Appellant, <br> v. <br> ENGS COMMERCIAL FINANCE CO.; <br> ASCENTIUM CAPITAL, LLC, <br>         Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Jennifer E. Niemann, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and LAFFERTY, Bankruptcy Judges.

APPEARANCES:

David Max Gardner argued for appellant; Andrew K. Alper of Frandzel Robins
Bloom & Csato, L.C. argued for appellee Ascentium Capital, LLC.

BRAND, Bankruptcy Judge:

## INTRODUCTION

Appellant, chapter 7[1] debtor Jaswinder Singh Bhangoo, appeals an order

sustaining an objection to his claimed automatic homestead exemption under

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy
Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy

1

California law. The bankruptcy court determined that Bhangoo's absence from the homestead property was not temporary, and therefore he did not meet the continuous residency requirement for a homestead under California Code of Civil Procedure ("CCP") § 704.710(c), which defines "homestead" for purposes of CCP § 704.730.

We publish to clarify that, for an absence to be deemed "temporary" under the California statute, the debtor must demonstrate that he or she had a continuous intent to return to the homestead property throughout the absence. Bhangoo did not demonstrate such intent. Seeing no legal error by the bankruptcy court, or any clear error in its factual finding regarding Bhangoo's intent with respect to the property, we AFFIRM.

## FACTS

### A.    Prepetition events

In 2011, Bhangoo purchased a home in Bakersfield, California – the Wild Rogue Property – and lived there with his family until sometime in 2018. In 2015 and 2016, creditors Engs Commercial Finance Co. and Ascentium Capital, LLC (together "Creditors") obtained judgments against Bhangoo and recorded abstracts of judgment which attached to the Wild Rogue Property.

Sometime in 2018, Bhangoo and his family moved out of the Wild Rogue Property and into a larger, rented home in Bakersfield – the Cimarron Property. The purpose for the move was so that Mrs. Bhangoo's parents could move in with the Bhangoos; the Wild Rogue Property was too small for the extended

Procedure.

2

family. It was understood that the in-laws would be living with the Bhangoos at the Cimarron Property temporarily. The in-laws did not contribute to the household expenses while living there. At some undisclosed time and for undisclosed reasons, the in-laws moved out.

Upon moving out of the Wild Rogue Property, the Bhangoos rented it out, first to an unnamed tenant for one year, then to a tenant named Brown, whose one-year lease began on September 12, 2019. Shortly after moving in, Brown stopped paying rent. Eventually, after delays related to the COVID-19 pandemic, the Bhangoos obtained a judgment against Brown, and she was evicted from the Wild Rogue Property in February 2021, a month after Bhangoo filed his bankruptcy case.

## B.   Postpetition events

Bhangoo filed his chapter 7 bankruptcy case on January 8, 2021. On his petition, Bhangoo represented that he lived at the Wild Rogue Property, but he was living at the Cimarron Property which he listed as his mailing address. Bhangoo claimed a $300,000 automatic homestead exemption for the Wild Rogue Property under CCP § 704.730.

At his § 341(a) meeting two months later, Bhangoo testified that he lived at the Cimarron Property and that the Wild Rogue Property was rented out on the petition date. Bhangoo explained that he was in the process of moving back into the Wild Rogue Property. Once the necessary repairs were completed after Brown's departure, Bhangoo and his family returned to the Wild Rogue Property on April 5, 2021.

Creditors objected to Bhangoo's claimed homestead exemption on two grounds: (1) Bhangoo did not reside at the Wild Rogue Property on the petition date; and (2) Bhangoo had not resided continuously at the Wild Rogue Property from the date the judicial liens attached. Creditors argued that Bhangoo's absence from the Wild Rogue Property was not temporary, because the act of renting it out – i.e., giving others the right to control, possess, and use it – was inconsistent with the statute's requirement that the debtor "resided continuously" in the property until the date the court determines that it is a homestead.

In response, Bhangoo argued that his absence from the Wild Rogue Property was only temporary and that he intended to return there. Bhangoo stated that, while Brown was living in the Wild Rogue Property, he and his wife decided that the rent for the Cimarron Property was unaffordable. Bhangoo stated that it was his specific intent to return to the Wild Rogue Property when Brown defaulted on the lease, and that he would have moved back there before the petition date if it were not for the COVID-19 related delays. Bhangoo argued that his intent to return was further demonstrated by the fact that he kept his driver's license address at the Wild Rogue Property.

After two hearings, the bankruptcy court sustained Creditors' objection and denied Bhangoo's claimed automatic homestead exemption. The court found that his absence from the Wild Rogue Property was not temporary. Thus, because Bhangoo did not continuously reside in the Wild Rogue Property from the date Creditors' judgment liens attached, he did not meet the continuous residency requirement for a homestead. This timely appeal followed.

4

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in finding that Bhangoo did not satisfy the continuous residency requirement for an automatic homestead exemption?

## STANDARDS OF REVIEW

The right of a debtor to claim an exemption is a question of law we review de novo, and the bankruptcy court's findings of fact with respect to a claimed exemption, including a debtor's intent, are reviewed for clear error. *Elliott v. Weil (In re Elliott)*, 523 B.R. 188, 191 (9th Cir. BAP 2014) (citing *Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16 (9th Cir. BAP 2003)). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). A finding of fact is not clearly erroneous if a permissible view of the evidence of record supports the finding. *SEC v. Rubera*, 350 F.3d 1084, 1093-94 (9th Cir. 2003).

## DISCUSSION

**A.    Law governing California automatic homestead exemptions**

California has opted out of the federal exemption scheme and permits its debtors only the exemptions allowable under state law. CCP § 703.130. Consequently, while the federal court decides the merits of state exemptions, the validity of the claimed state exemption is controlled by California law. *Phillips v. Gilman (In re Gilman)*, 887 F.3d 956, 964 (9th Cir. 2018); *In re Kelley*, 300

5

B.R at 16 (citing *LaFortune v. Naval Weapons Ctr. Fed. Credit Union (In re LaFortune)*, 652 F.2d 842, 846 (9th Cir. 1981)).

In California, there are two types of homestead exemptions: (1) a declared homestead exemption, which a party must record and which was not done in this case; and (2) an automatic homestead exemption. "An automatic homestead exemption arises by operation of law when a party's principal dwelling is sold in a forced sale." *In re Cumberbatch*, 302 B.R. 675, 678 (Bankr. C.D. Cal. 2003) (citing *In re Mulch*, 182 B.R. 569, 572 (Bankr. N.D. Cal. 1995)). "The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption." *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 334 (9th Cir. BAP 2016) (citing *In re Kelley*, 300 B.R. at 21).

Under California law, the party claiming the automatic homestead exemption has the burden of proof on the existence of the exemption. CCP § 703.580(b). The bankruptcy court is required to apply the state law burden of proof on exemptions claimed in California. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000); *In re Diaz*, 547 B.R. at 337 ("[W]here a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation."); *In re Pashenee*, 531 B.R. 834, 837 (Bankr. E.D. Cal. 2015). Notwithstanding this burden on the debtor, bankruptcy courts must "liberally construe 'the law and facts to promote the beneficial purposes of the homestead legislation and to benefit the debtor.'" *In re Gilman*, 887 F.3d at 964 (quoting *Tarlesson v. Broadway Foreclosure Invs., LLC*, 184 Cal. App. 4th 931, 936 (2010)).

California law imposes a residency requirement for an automatic homestead exemption. It applies to a judgment debtor's principal dwelling (1) in which the judgment debtor (or spouse) resided at the time the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor (or spouse) resided continuously until the court determines that the dwelling is a homestead in connection with a forced sale. CCP §§ 704.710(c), 703.100(b)(1). The factors a court considers in determining residency for homestead purposes are the debtor's physical occupancy of the property and the debtor's intent to live there. *In re Gilman*, 887 F.3d at 965 (first citing *In re Diaz*, 547 B.R. at 335; and then citing *Ellsworth v. Marshall*, 196 Cal. App. 2d 471, 474 (1961)).

It is undisputed that Bhangoo resided at the Wild Rogue Property when Creditors' judgment liens attached and that he did not physically occupy the Wild Rogue Property on the petition date. The bankruptcy court correctly observed that this did not necessarily prevent him from claiming an automatic homestead exemption. In 1983, CCP § 704.710(c) was amended to delete the word "actually," which appeared before "resided," to create a temporary absence doctrine designed to accommodate such situations as a vacation or hospital stay and prevent the loss of a homestead exemption. *See* 17 Cal.L.Rev. Comm. Reports 854 (1983). Courts applying the amended statute have found that a debtor who did not physically occupy a property on the petition date is not precluded from claiming the automatic homestead exemption on that basis alone. *See e.g., In re Diaz*, 547 B.R. at 334; *McBeth v. Karr (In re Karr)*, BAP No. CC-06-1079-KMoSn, 2006 WL 6810996, at *4 (9th Cir. BAP Oct. 2, 2006), *aff'd*, 278 F. App'x 741 (9th Cir. 2008); *In re Pham*, 177 B.R. 914, 918 (Bankr. C.D. Cal. 1994);

7

*In re Bruton*, 167 B.R. 923, 926 (Bankr. S.D. Cal. 1994); *In re Dodge*, 138 B.R. 602, 607 (Bankr. E.D. Cal. 1992); *In re Yau*, 115 B.R. 245, 249 (Bankr. C.D. Cal. 1990); *Cal. Coastal Comm'n v. Allen*, 167 Cal. App. 4th 322, 330-31 (2008). And prior to the creation of the automatic homestead exemption in 1975, California courts had long held that a lack of physical occupancy does not preclude a party from establishing actual residency and claiming the homestead, if the claimant intends to return. *See In re Diaz*, 547 B.R. at 335-36 (discussing pre-1975 cases involving a declared homestead).

Thus, a debtor temporarily absent from his or her principal dwelling can claim a homestead exemption if the debtor can establish an intent to return to the principal dwelling after the absence. *Id.; In re Karr*, 2006 WL 6810996, at *4-5; *In re Pham*, 177 B.R. at 918-19; *In re Bruton*, 167 B.R. at 926; *In re Dodge*, 138 B.R. at 607; *In re Yau*, 115 B.R. at 249. Inherent in that analysis is, did the debtor intend to maintain the property as the debtor's principal dwelling continuously throughout the absence? *See In re Elliott*, 523 B.R. at 196-97.

**B.** **The bankruptcy court did not err in finding that Bhangoo's absence was not temporary and that he did not satisfy the continuous residency requirement.**

The bankruptcy court found that, based on the evidence, Bhangoo's absence from the Wild Rogue Property was not a temporary one. While he may have initially left there to accommodate his in-laws, no evidence suggested that he intended to, or attempted to, return to the Wild Rogue Property when his in-laws ceased residing at the Cimarron Property. Further, Bhangoo's residence at the Cimarron Property did not appear dependent upon whether his in-laws

8

resided there, since they did not contribute to the household expenses while living there.

The bankruptcy court also found that Bhangoo's execution of two consecutive one-year lease agreements with tenants demonstrated no immediate desire to return to the Wild Rogue Property. Neither Bhangoo, his wife, nor any other family member resided in the Wild Rogue Property during his absence. Although Bhangoo stated that he intended to return to the Wild Rogue Property when Brown defaulted, the facts did not demonstrate that he intended to return there when he vacated that property or before Brown defaulted. In other words, Bhangoo did not say that he would have moved back to the Wild Rogue Property had Brown not defaulted.

Bhangoo argues that the bankruptcy court "clearly erred" by taking a "comparison approach" of similar homestead exemption cases involving temporary absences, in particular, *Allen*, to conclude that his absence was not temporary. Instead, argues Bhangoo, a court should simply adjudicate the evidentiary issues of what evidence established that the debtor intended the subject property to be the homestead, and what evidence existed that demonstrated an actual intent to return.

The bankruptcy court did not err by reviewing similar case law for its determination that Bhangoo's absence was not temporary. Many courts, including this one, have condoned that same analysis. Further, the bankruptcy court did adjudicate the evidentiary issues Bhangoo asserts, just not in his favor.

The bankruptcy court found that Bhangoo's case was more like *Allen* and *Redwood Empire Production Credit Association v. Anderson (In re Anderson)*, 824

9

F.2d 754 (9th Cir. 1987), and less like *Dodge* and *Pham.* In *Allen*, a case from a California Court of Appeal, the debtor rented out the subject property to tenants, but reserved for himself the right to use a one-car garage on the property and an apartment above the garage. 167 Cal. App. 4th at 330. The lease agreement was for two years, during which time the debtor left the country to start a business in Australia. Although the debtor stated that the property was his principal dwelling and made much of the fact that he still had use of some of it, the court found that the debtor "was not 'temporarily absent' while retaining the property as his principal dwelling." *Id.* at 331. The debtor "was not temporarily absent from the property for work or vacation; he apparently resided elsewhere while retaining the right to be temporarily present in a room on the property when he was in the Malibu area[,]" which "does not meet the continuous residence requirement for a principal dwelling under section 704.710." *Id.*

In *Anderson*, four months prior to their bankruptcy filing the debtors purchased and moved into a home in Sonoma, leased their Mendocino home to tenants, but claimed a homestead exemption for the Mendocino home. 824 F.2d at 755. The purpose of the move to Sonoma was so that the husband could be closer to the college he was attending. With little analysis, the Ninth Circuit Court of Appeals held that the debtors were not entitled to the homestead exemption because they did not reside in the Mendocino property. *Id.* at 756-57. The court found that "the absence from Mendocino could not be construed as a temporary absence like a vacation or hospital stay which the homestead statutes are designed to excuse." *Id.* at 756.

In *Dodge*, the debtors claimed a homestead exemption for their home in Sacramento. 138 B.R. at 604. The wife took a job in Salinas and rented a one-bedroom apartment there, but returned to the Sacramento home on weekends to see her spouse. *Id.* at 605. The court allowed the claimed homestead exemption, finding that the absence of a few days at a time for employment away from home fit within the definition of "temporary absence." *Id.* at 607.

In *Pham*, the debtors initially resided in Los Angeles. 177 B.R. at 916. Later, they purchased a four-plex property in Bakersfield, which they rented to tenants. After a tenant vacated one of the three-bedroom units, the debtors moved into the Bakersfield property, but continued to commute daily to Los Angeles for work. They rented out their Los Angeles home to tenants. Eventually, the debtors rented an apartment in Los Angeles to ease their commute and to permit their younger children to return to their Los Angeles schools. Most of the debtors' furniture and possessions remained in the Bakersfield property, as did the debtors' eldest daughter who attended school there and paid no rent. The debtors returned to the Bakersfield property on weekends and holidays. They also intended to cease renting the Los Angeles apartment once their youngest child graduated from high school, in four years. *Id.* The court allowed the debtors' claimed homestead exemption for the Bakersfield property, finding that they had maintained it as their principal residence and that their absence from it was only temporary. *Id.* at 919-20.

As the bankruptcy court observed, Bhangoo's case was unlike *Dodge* or *Pham*. In those cases, the debtors rented an apartment away from the homestead residence for employment purposes and, more importantly, regularly returned

to the homestead. Here, Bhangoo did not occupy the Wild Rogue Property for at least two years.

There are other cases worthy of discussion. The first is *In re Fisher*, No. 09-91587-D-7, 2009 WL 9087842 (Bankr. E.D. Cal. Sept. 22, 2009). Until 2007, two years before filing for bankruptcy, the debtors resided in the claimed homestead – the Tracy Property. *Id.* at *1. At that point, they purchased and moved into the Turlock Property (40 miles away) and rented out the Tracy Property. Prior to filing their petition, the debtors' attorney advised them to move back into the Tracy Property in order to save it from foreclosure. The debtors gave the tenant at the Tracy Property 60 days to vacate. The debtors filed for bankruptcy in May 2009, at which time they still lived in the Turlock Property but claimed a homestead exemption for the Tracy Property. *Id.* The debtors moved back into the Tracy Property in August 2009, about three months after their bankruptcy filing. *Id.* at *2.

The issue in *Fisher* was whether the debtors' intent to move back into the Tracy Property was sufficient to make that property their homestead for purposes of CCP § 704.710. *Id.* The debtors testified that, as of the petition date, they intended to move back to the Tracy Property after their tenant moved out. *Id.* at *1. The court was not convinced. Finding the facts materially similar to *Anderson*, it reasoned that the debtors' circumstances were substantially different from the situation of a temporary absence for a vacation or hospital stay. *Id.* at *2-3. The debtors had substituted one principal dwelling for another, and thereby broke the chain of continuous residency in the Tracy Property. *Id.* at *3. They had purchased and moved into the Turlock Property between one

and two years before they filed their petition and had rented out the Tracy Property. There was also no indication at the time the debtors moved that they did not intend the Turlock Property to be their principal dwelling. *Id.* at \*2.

Another noteworthy case is *Bruton*. There, the debtor's homestead property was a condominium in San Diego. 167 B.R. at 925. In November 1992, the unemployed debtor took a job in Concord. He testified that he took the position out of "desperation" but had no intention of permanently relocating to Concord. He filed his bankruptcy case in February 1993. During the four month period between November 1992 and the petition date, the debtor did not rent an apartment in Concord, left behind his furniture and belongings in the San Diego condo, and did not change his driver's license. He also returned to San Diego for long weekends. *Id.* at 925-26. Because the debtor did not physically occupy the homestead property on the petition date, the issue was whether his four-month absence from it was temporary. *Id.* at 926. The *Bruton* court found that, based on the evidence, the debtor's absence was temporary, noting that the case was more like *Dodge*, where the debtor returned home every weekend, and less like *Anderson and Yau*, where the debtors moved from their home without any concrete evidence of their intention to return. *Id.; see also In re Yau*, 115 B.R. at 249 (court finding debtors' absence not temporary despite their claim of hoping to return to the property someday, because they provided no evidence of how much time might lapse before they would return to the property, if ever).

In *Karr*, this Panel noted the "useful analysis" set forth in *Bruton* for resolving temporary absence issues. 2006 WL 6810996, at \*5. The analysis focuses on "'whether the debtors demonstrated, rather than merely claimed,

their intent to return to their home after the absence.'" *Id.* (quoting *In re Bruton*, 167 B.R. at 926). In other words, courts should focus on what **objective** evidence showed an intent to return. That is the analysis the bankruptcy court engaged in here.

Besides Bhangoo's testimony that the absence was a temporary accommodation for his in-laws and that he always intended to return to the Wild Rogue Property, the only objective evidence of his intent to return was that he kept his driver's license address at the Wild Rogue Property. Other objective evidence demonstrated a lack of intent to return to the Wild Rogue Property or to maintain it as his principal dwelling. Bhangoo executed two consecutive one-year lease agreements to tenants, the second of which may have been extended had the tenant not defaulted; there was no evidence to the contrary. Bhangoo's mailing address was the Cimarron Property, and he apparently left no personal belongings at the Wild Rogue Property. Bhangoo also offered no evidence as to how "temporary" the living situation would be with his in-laws at the Cimarron Property. There was no evidence as to how long the families intended to live there when the decision was made to move and rent out the Wild Rogue Property. There was also no evidence as to when or why the in-laws moved out of the Cimarron Property or that Bhangoo and his family moved out as a result.

Bhangoo argues that the bankruptcy court ruled against him because he executed two consecutive one-year leases and moved out of the Wild Rogue Property. We disagree. That is just one of the factors the court considered, albeit heavily. Arguably, a debtor's renting out of the homestead property would

indicate an intent not to maintain it as his or her principal dwelling or to return. However, the debtor's renting out of the homestead or the reason for the absence is not the controlling question. What matters is the debtor's intent, and the debtor's conduct with respect to the homestead is a manifestation of that intent which the court must consider. The bankruptcy court considered the evidence as to Bhangoo's intent and found that he did not establish, as a matter of fact, that his absence from the Wild Rogue Property was temporary. Given the record, we see no clear error in that finding.

Bhangoo also argues that Creditors did not sufficiently meet their burden of persuasion to shift the burden to him to show that the homestead exemption was properly claimed. Bhangoo argues that the only evidence Creditors presented was the petition which indicated that he did not live at the Wild Rogue Property on the petition date. Creditors presented not only that fact, but also Bhangoo's testimony from the § 341(a) meeting that he did not live at the Wild Rogue Property and was renting it out to a non-related third party.

It is not clear what additional evidence Creditors had to present to satisfy their burden of persuasion. In *Karr*, the chapter 7 trustee sufficiently met her burden of persuasion to shift the burden of proof to the debtor by relying primarily on the debtor's statements in the petition with respect to venue, which indicated that she lived in the Central District of California when the homestead was in the Northern District, and the debtor's stated address, which was not the homestead address. 2006 WL 6810996, at *1-2. Here, unlike *Karr*, there was the additional fact that the Wild Rogue Property was being rented out. The

15

evidence Creditors provided was sufficient to shift the burden of proof to Bhangoo.

In summary, the bankruptcy court applied the correct law and made findings supported by the evidence. Accordingly, it did not err when it concluded that Bhangoo did not continuously reside in the Wild Rogue Property for purposes of CCP § 704.710, and denied the claimed homestead exemption under CCP § 704.730.

## CONCLUSION

For the reasons stated above, we AFFIRM.